UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
MICHAEL DAVIS,

                                               Civil Case No.: 1:22-cv-6518

                     Plaintiff,

        -against-                          **COMPLAINT**

TURNER CONSTRUCTION COMPANY
MICHAEL CONSTANTINI, individually, and        Plaintiff Demands a
MICHAEL NOSTRAND, individually,              Trial by Jury

                        Defendants.
--------------------------------------------------------------------------------X

Plaintiff, MICHAEL DAVIS (hereinafter referred to as "Plaintiff"), by and through his attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants TURNER CONSTRUCTION COMPANY ("TURNER"), MICHAEL CONSTANTINI ("CONSTANTINI"), individually, and MICHAEL NOSTRAND ("NOSTRAND"), individually (hereinafter referred to collectively as "Defendants"), upon information and belief, as follows:

## NATURE OF CASE

1. Plaintiff complains pursuant to 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 ("1981"), the laws of the State of New York, and the Administrative Code of the City of New York, based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking declaratory and injunctive relief and damages to redress the injuries that Plaintiff has suffered as a result of, *inter alia*, racial discrimination and color discrimination, together with hostile work environment, retaliation, and wrongful termination by his employer.

## JURISDICTION AND VENUE

2.  Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under 42 U.S.C. §1981. The Court also has jurisdiction pursuant to 29 U.S.C. §2617, 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

3.  Additionally, this Court has supplemental jurisdiction under the State law causes of action asserted in this action.

4.  Venue is proper in that the events and transactions giving rise to these claims occurred in New York County, and pursuant to CPLR § 503 because Defendant TURNER resided in New York County at the time Plaintiff commenced this action.

## PARTIES

5.  Plaintiff is an individual African American male who is a resident of the State of Pennsylvania, County of Monroe.

6.  At all times material, Defendant TURNER CONSTRUCTION COMPANY is a domestic business corporation duly existing by the virtue and laws of the State of New York that is registered to conduct business in the State of New York.

7.  At all times material, Defendant TURNER is an American construction company with presence in 20 countries. It is a subsidiary of the German company Hochtief. It is the largest domestic contractor in the United States as of 2020.

8.  At all times material, TURNER employed Plaintiff as a laborer.

9.  At all times material, Defendant MICHAEL CONSTANTINI is an individual Caucasian male who resides in the State of New York, County of Kings.

10. At all times material, TURNER employed Defendant CONSTANTINI as a Laborer (CONSTANTINI was also the Union Shop Steward).

11. At all times material, in his role as Shop Steward Defendant CONSTANTINI held managerial responsibility over Plaintiff, controlling many tangible aspects of Plaintiff's job duties.

12. At all times material, Defendant MICHAEL NOSTRAND is an individual Caucasian male who resides in the State of New York, County of Kings.

13. At all times material, TURNER employed NOSTRAND as a Labor Foreman.

14. At all times material, Defendant NOSTRAND held supervisory authority over Plaintiff, controlling many tangible aspects of Plaintiff's job duties, including the power to hire and fire Plaintiff.

## STATEMENT OF FACTS

15. TURNER hired Davis in or around December 2019.

16. Throughout the course of Plaintiff's employment, Defendants NOSTRAND and CONSTANTINI, Plaintiff's supervisors, subjected Plaintiff (and other African American employees) to racially discriminatory and dehumanizing comments.

17. In or around January 2020, CONSTANTINI and NOSTRAND began saying "**nigger**" while in the presence of Plaintiff (and others) on a regular basis. NOSTRAND and CONSTANTINI's egregious behavior caused the work environment to turn hostile and Plaintiff began to suffer from severe anxiety.

18. In *Swinton v. Potomac Corp.*, the Court noted that "**nigger**" is "perhaps the most offensive and inflammatory racial slur in English" and is "expressive of hatred and bigotry."[1] In

---

[1] *Love v. Premier Util. Servs., LLC*, 186 F. Supp. 3d 248, 255 (E.D.N.Y. 2016) (citing 270 F.3d 794, 817 (9th Cir.2001), *cert. denied*, 535 U.S. 1018, 122 S.Ct. 1609, 152 L.Ed.2d 623 (2002).

*Benedith v. Malverne Union Free Sch. Dist.*,[2] the Court noted, "One court has aptly observed that **'[f]ar more than a 'mere offensive utterance,' the word 'nigger' is pure anathema to African–Americans. Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates.**" *White v. BFI Waste Services, LLC,* 375 F.3d 288, 298 (4th Cir.2004) (quoting *Rodgers v. Western–Southern Life Ins. Co.,* 12 F.3d 668, 675 (7th Cir.1993) (citation and internal quotation marks omitted)). Or, as another court noted, "[g]iven American history, we recognize that the word 'nigger' can have a highly disturbing impact on the listener. **Thus, a plaintiff's repeated subjection to hearing that word could lead a reasonable factfinder to conclude that a working environment was objectively hostile**." *Hrobowski v. Worthington Steel Co.,* 358 F.3d 473, 477 (7th Cir.2004) (citations and footnote omitted); *McKay v. Principi,* No. 03 Civ. 1605(SAS), 2004 WL 2480455, at *6 (S.D.N.Y. Nov. 4, 2004) (collecting cases stressing the harmful effects of the use of the word "nigger" in the workplace).

19. In addition, Defendants NOSTRAND and CONSTANTINI made discriminatory remarks concerning the Black Lives Matter ("BLM") movement.

20. By way of example only, in or around February 2020, CONSTANTINI informed Plaintiff, and other African-American employees, that BLM was going to "get what's coming to them," "black people aren't clean," and "I used to live in Brooklyn, so it's OK for me to say nigger."

21. Plaintiff was appalled by his supervisor's comments and instructed CONSTANTINI that

---

[2] 38 F. Supp. 3d 286, 314 (E.D.N.Y. 2014).

regardless of where he lived it was unacceptable for him to use this dehumanizing racial slur.

22. Moreover, Plaintiff's coworker immediately reported these comments to TURNER's Project Manager, JOSEPH GRASSO ("GRASSO").

23. Nevertheless, Defendants continued to subject Plaintiff to a hostile work environment on the basis of his race and color.

24. In or around March 2020, Plaintiff began wearing face masks that said "BLM," and "I can't breathe." In response, several of Plaintiff' coworkers began writing "WLM" and "White Lives Matter" on signage throughout the job site.

25. Plaintiff (and others) immediately reported this reprehensible graffiti to Defendant NOSTRAND, but no corrective action was taken. Defendant NOSTRAND merely instructed Plaintiff to remove any posters that said "WLM."

26. On another occasion, in or around April 2020, Plaintiff and another coworker were wearing their BLM masks when they passed Caucasian employees in a corridor. As Plaintiff turned the corner, these Caucasian individuals screamed, "White Power." Once again, Plaintiff complained to Defendant NOSTRAND, but no corrective action was taken.

27. Defendants NOSTRAND and CONSTANTINI also made discriminatory remarks regarding Jewish people in Plaintiff's presence. Plaintiff's coworker recorded several conversations (to which he was a party) with NOSTRAND and CONSTANINI in which they both stated that Jews are "fucking animals that have hepatitis," "Jews are fucking animals," "Jews' homes smell so bad because they are dirty," Jews are concerned with money," "fuckin Jews think they are somebody," and referred to Jewish people as

"dangerous."

28. Plaintiff was incredulous of TURNER's gross indifference toward these horrendous and egregious racial and religious slurs. Plaintiff was extremely disappointed as he was highly motivated to work for TURNER based upon their representations that they were a leader in the space of diversity, equity, and inclusion; however, despite numerous complaints to TURNER's management, it became apparent to Plaintiff that TURNER was unconcerned and knowingly subjected their employees to a work environment that was permeated with racial and discriminatory animus.

29. As a direct result, Plaintiff continued to suffer from severe anxiety and depression.

30. At all times material, Defendants failed to take any prompt remedial action to prevent or correct the discriminatory action and hostile work environment.

31. The above are just some of the examples of unlawful discrimination and retaliation to which Defendants subjected Plaintiff.

32. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

33.  As a result of Defendants' discriminatory and intolerable conduct, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

34. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured unwarranted financial hardships and irreparable damage to his professional reputation.

35. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and

other non-pecuniary losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

36. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all Defendants, jointly and severally.

37. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

38. Plaintiff claims alternatively (in the event Defendants claim so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

<u>**AS A FIRST CAUSE OF ACTION**</u>
<u>**UNDER FEDERAL LAW**</u>
<u>**42 U.S.C. SECTION 1981**</u>
<u>**(AGAINST ALL DEFENDANTS)**</u>

39. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

40. 42 U.S.C.A. Section 1981 states in relevant part as follows:

"Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and

7

termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §1981.

41. Defendants discriminated against Plaintiff, as a member of the African American race, in violation of the rights afforded to him by 42 U.S.C. §1981.

42. By the conduct described above, Defendants intentionally deprived Plaintiff of the same rights as are enjoyed by white citizens, to the creation, performance, enjoyment, and all benefits and privileges of his contractual relationship with Defendants, in violation of 42 U.S.C. §1981.

43. As a result of Defendants' discrimination in violation of Section 1981, as a member of the African American race, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of his contractual relationship which provided substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief; and having suffered such anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendants' actions, thereby entitling Plaintiff to compensatory damages.

44. As alleged above, Defendants acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

45. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SECOND CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**NEW YORK STATE LAW**
**(AGAINST ALL DEFENDANTS)**

46. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

47. New York State Executive Law § 296 provides that,

"1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

48. Defendants violated the section cited herein by discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of his race and color.

49. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

50. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A THIRD CAUSE OF ACTION**
**FOR RETALIATION UNDER**
**NEW YORK STATE LAW**
**(AGAINST ALL DEFENDANTS)**

51. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

52. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article".

53. Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff with respect to the terms, conditions or privileges of his employment because of his opposition to the unlawful employment practices of Defendants.

54. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A FOURTH CAUSE OF ACTION
## UNDER NEW YORK STATE LAW
## AIDING AND ABETTING
## (AGAINST ALL DEFENDANTS)

55. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

56. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

57. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

58. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

59. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

60. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

61. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions

and a hostile work environment, and otherwise discriminating against the Plaintiff because of

Plaintiff's race and color.

62. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs

of New York City Administrative Code Title 8.

63. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SIXTH CAUSE OF ACTION**
**FOR RETALIATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AGAINST ALL DEFENDANTS)**

64. Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

65. The New York City Administrative Code Tide 8, §8-107(1)(e) provides that it shall be

unlawful discriminatory practice: "For an employer. . , to discharge . . . or otherwise

discriminate against any person because such person has opposed any practices forbidden

under this chapter. . . "

66. Defendants engaged in an unlawful discriminatory practice in violation of New York City

Administrative Code Tide 8, §8-107(1) (e) by discriminating against the Plaintiff because of

Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

67. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SEVENTH CAUSE OF ACTION**
**FOR AIDING AND ABETTING UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AGAINST ALL DEFENDANTS)**

68. Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

69. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be

11

unlawful discriminatory practice: "For any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

70. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

71. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS AN EIGHTH CAUSE OF ACTION
FOR INDIVIDUAL LIABILITY UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE
(AGAINST DEFENDANT TURNER)**

72. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

73. Section 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section." b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such

discriminatory conduct.

74. Defendant TURNER is liable for the egregious conduct of its employees, CONSTANTINI and NOSTRAND.

75. Defendants violated the above section as set forth herein.

**AS A NINTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AGAINST ALL DEFENDANTS)**

76. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

77. Section 8-107(19), entitled Interference with protected rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

78. Defendants violated the above section as set forth herein.

**AS A TENTH CAUSE OF ACTION**
**UNDER NEW YORK STATE LAW**
**NEGLIGENCE**
**(AGAINST DEFENDANT TURNER)**

79. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

80. At all times material, Defendants were negligent in the hiring, firing, retention and supervision of Defendants CONSTANTINI and NOSTRAND.

81. Defendants owed Plaintiff a duty to provide Plaintiff with a reasonably safe environment.

82.  Defendants breached their duties to Plaintiff and as a result Plaintiff was damaged in an amount to be determined at the time of trial.

## **JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated:  August 1, 2022
        New York, New York

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff*

By:  _____

Zack Holzberg, Esq.
One Penn Plaza, Suite 4905
New York, New York 10119
(212) 587-0760